USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/17/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EMIL KOLEV,

                Petitioner,

v.

JEFFERSON SESSIONS, et al.,

                Respondent.

No. 17-CV-9477 (RA)

MEMORANDUM OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

Before this Court is a dispute as to the proper venue for the motion to certify a class action brought by Petitioner Emil Kolev, who was deported from this country to Bulgaria on December 14, 2017. After Petitioner filed his motion, the Court accepted the government's suggestion that the issue of venue be first briefed separately to determine if the briefing regarding the certification motion should take place in the Southern District of New York or elsewhere. *See* Dkt. 21. The parties then submitted briefs solely on the issue of venue. Dkts. 22, 26, 29, 30. For the reasons discussed below, the Court determines that venue is proper in this district.

## BACKGROUND[1]

Before he was deported to Bulgaria on December 14, 2017, Mr. Kolev had resided in the United States for nearly the past 27 years without a criminal record. Mr. Kolev first came to this country on January 30, 1991 on a non-immigrant visa that expired on July 29 of that year. On March 16, 1998, the then-existing Immigration and Naturalization Service ("INS") served Mr. Kolev with a notice to appear, in so doing charging him as a removable alien. Mr. Kolev was unsuccessful in gaining relief from removal and on June 1, 2011 an immigration judge granted his

---

[1] Unless otherwise noted, the Court draws the relevant background facts from Mr. Kolev's habeas petition (Dkt. 1) and the 28 U.S.C. § 1746 declaration of ICE deportation officer Jeffrey Berndt (Dkt. 23).

application for voluntary departure. Mr. Kolev was thus required to voluntarily depart the country on or before August 30, 2001, but Mr. Kolev did not do so.

Instead, for the next 16 years, Mr. Kolev continued to live in the United States. Specifically, as he had since his arrival, he lived in New York City with his romantic partner, Ms. Anna Sapundjieva, with whom he had first come to this country. Like Mr. Kolev, Ms. Sapundjieva arrived here from Bulgaria in 1991 on a non-immigrant visa. Ms. Sapundjieva, however, was successful in adjusting her status to legal permanent resident and became a United States citizen in 2007. Mr. Kolev and Ms. Sapundjieva were married on February 24, 2012.

Then in August of 2015, Mr. Kolev went to Texas. A routine inspection of his vehicle there led to his arrest and detention by agents of the Department of Homeland Security's Immigration and Customs Enforcement ("ICE") at the South Texas Detention Complex in Pearsall, Texas. Approximately a week after his detention, however, ICE released Mr. Kolev with an order of supervision and directed him to appear for a check-in with ICE Enforcement and Removal Operations ("ERO") officials in New York City on October 13, 2015. Mr. Kolev checked in with ERO officials as instructed on that date, and began attending subsequent check-ins as ordered.

In the meantime, beginning in 2015, Mr. Kolev received several employment authorizations from United States Citizenship and Immigration Services ("USCIS"), the last of which did not expire until June 16, 2018—more than six months after his eventual deportation. Furthermore, in October of 2015, Ms. Sapundjieva filed an immigration status I-130 Petition for Alien Relative on behalf of Mr. Kolev, by then her husband, thus beginning a legal process intended to lead to Mr. Kolev's lawful immigration status. In 2016, she and Mr. Kolev attended an in-person interview regarding the I-130 petition, but received no decision. In May 2017, still waiting on a decision for her husband, Ms. Sapundjieva made an in-person inquiry with USCIS

and was told that a notice requesting an additional in-person interview would be mailed to her and Mr. Kolev. On June 8, 2017, represented by counsel, Mr. Kolev filed a request for a stay of his removal.

Mr. Kolev continued to attend his check-ins with ERO officials as ordered. He alleges that at his July 21 and September 14, 2017 check-ins, an ERO officer told him that no decision had been made as to his stay request and that ICE was awaiting the completion of his I-130 petition process. He further alleges that after the September 14, 2017 check-in, accompanied by his wife and counsel, he made an in-person inquiry at the USCIS district office as to the status of the I-130 petition. Mr. Kolev alleges that a USCIS official told him, his wife, and counsel that the petition had been recommended for approval and that a written notice would be sent within a few months.

At Mr. Kolev's next check-in on November 22, 2017, after refusing to allow Ms. Sapundjieva to accompany her husband, ICE officers arrested Mr. Kolev and transferred him to the Hudson County Correctional Facility in Kearny, New Jersey for detention.

When Mr. Kolev's counsel challenged his sudden detention, ERO officials faxed her a denial of Mr. Kolev's stay request stamped July 21, 2017. On December 4, 2017, Mr. Kolev filed a habeas corpus petition challenging the legality of his detention and the medical care he was receiving, as well as the detention and care of similarly situated persons. *See* Petition (Dkt. 1). In addition to a writ of habeas corpus, the petition seeks declaratory and injunctive relief. *Id.* at 38. The petition names as respondents a variety of federal immigration and law enforcement officials, including Christopher Shanahan, whom the petition describes as "the warden of the Hudson County Correctional Facility where Petitioner is currently detained." *Id.* at 1, 5.

On November 30 and December 5, 2017, Mr. Kolev moved before an immigration judge to re-open his removal proceedings and to stay his removal. On December 14, 2017, an

immigration judge denied these motions. That same day, Mr. Kolev filed an emergency motion for a preliminary injunction barring ICE from deporting him without first performing a medical examination on him by a qualified medical professional. Mr. Kolev noted explicitly that he did "not contest the right of the government to execute a removal order" against him. Mem. in Support of Prelim. Injun. (Dkt. 7) at 7. Later that day, this Court ordered the government to appear by phone and to produce medical records related to Mr. Kolev's condition. After reviewing the records and receiving representations from the government as to Mr. Kolev's health and adequate supply of necessary medication, the Court denied the emergency motion. Also that same day, ICE officials brought Mr. Kolev from the New Jersey detention center for processing in Manhattan and then transported him to Newark Liberty International Airport, where Mr. Kolev was deported to Bulgaria.

On December 19, 2017, this Court ordered Mr. Kolev to inform the Court as to any viable claims remaining despite his deportation. Dkt. 11. On January 4, 2017, Mr. Kolev moved for class certification of his original petition pursuant to Federal Rule of Civil Procedure 23 for a number of classes, including persons both in and out of ICE detention. *See* Dkt. 12–15. The following day, Mr. Kolev filed a memorandum arguing why the claims raised in his petition and accompanying motion for class certification were not mooted by his deportation. Dkt. 13.

As noted above, the Court accepted the suggestion of the government that before fully briefing the issues of class certification and mootness, the parties should brief the disputed issue of venue. The parties thereafter submitted briefs addressing only that issue. Dkts. 22, 26, 29, 30. These briefs necessarily implicate the related question of who the correct respondent is in this case, a question that is integral to determining within which district an immigration habeas is properly brought. The Court now addresses these questions.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(a), federal district courts possess limited authority to grant writs of habeas corpus "within their respective jurisdictions." The proper respondent to a habeas petition is "the person having custody of the person detained." *Id.* § 2243; *see also id.* § 2242. "This custodian . . . is the person with the ability to produce the prisoner's body before the habeas court." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (internal quotations omitted). "[I]n habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* Both the Supreme Court and the Second Circuit, however, have explicitly declined to settle whether the rule announced in *Rumsfeld*—termed the "immediate custodian" rule—applies in the immigration context. *See id.* at 435 n.8; *Henderson v. I.N.S.*, 157 F.3d 106, 128 (2d Cir. 1998).

Notwithstanding that uncertainty, a majority of courts in this district—including this one—have applied the immediate custodian rule to core immigration challenges, challenging present custody. *See, e.g.*, *Phrance v. Johnson*, No. 14-CV-3569 (TPG), 2014 WL 6807590, at *2 (S.D.N.Y. Dec. 3, 2014); *Medina-Valdez v. Holder*, No. 12-CV-6002 (RA), 2012 WL 4714758, at *1–2 (S.D.N.Y. Oct. 1, 2012); *Zhen Yi Guo v. Napolitano*, No. 09-CV-3023 (PGG), 2009 WL 2840400, at *3–5 (S.D.N.Y. Sept. 2, 2009); *but see Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 495–97 (S.D.N.Y. Jan. 28, 2009) (finding that traditional principles of venue apply to immigration habeas cases post-*Rumsfeld*). When immigration habeas actions do not challenge present confinement,—so-called "non-core challenges"—courts have held that *Rumsfeld*'s immediate custodian rule does not apply. *See Singh v. Holder*, No. 12-CV-4731 (JMF), 2012 WL 5878677, at *1–*2 (S.D.N.Y. Nov. 21, 2012). Instead, courts take a somewhat broader view and

allow more removed legal custodians, such as the Attorney General, to be named as respondents. *See, e.g., Batista-Taveras v. Ashcroft*, No. 03-CV-1968 (LAK), 2004 WL 2149095, at *6 (S.D.N.Y. Sept. 23, 2004).

## DISCUSSION

Mr. Kolev alleges in the petition—and the government does not dispute the facts underlying the allegation—that Christopher Shanahan, an ICE official based in New York City, "is the warden" of the facility where he was being held at the time he filed his petition. Petition at 5. Mr. Kolev argues that this makes Mr. Shanahan his immediate custodian and that venue is therefore proper the Southern District of New York. The Court agrees.

The particular arrangements between local jail authorities and federal immigration officials present a distinct set of circumstances in this case. Mr. Shanahan's title is director of ICE's New York City ERO field office. As alleged by Mr. Kolev and undisputed by the government, however, Mr. Shanahan's duties extended across the Hudson River and governed the custody of immigration detainees in the Hudson County Correctional Facility in Kearny, New Jersey. At the time of Mr. Kolev's detention, pursuant to an agreement between ICE and Hudson County, ICE maintained direct supervisory authority over the jail officials who had been specially deputized to perform immigration functions reserved for federal officers. *See* 8 U.S.C. § 1357(g). Strange as it may sound, in the immigration context, the state official who manages the overall facility has essentially no authority over the custody of the immigration detainees held there. Indeed, as a court in this district recently noted in another immigration habeas case at the Hudson County facility, "ICE is in complete control of detainees' admission and release." *Calderon v. Sessions*, No. 18-CV-5222 (PAC), 2018 WL 3677891, at *3 (S.D.N.Y. Aug. 1, 2018). "Detainees cannot be released without the express authorization of ICE; ICE, and only ICE, may authorize release of any detainee." *Id.*

In other words, in the immigration context, the official director of the Hudson County facility "has no literal power to produce the petitioner," *id.* at *4, and thus fails the crucial test under *Rumsfeld* as to whether he is Mr. Kolev's immediate custodian, *see* 542 U.S. at 435.

As a result, the government's preferred respondent—Ronald P. Edwards, the director of the Hudson County Department of Corrections and Rehabilitation—is in fact the "other remote supervisory official" that *Rumsfeld* explicitly cautioned against classifying as a proper habeas respondent. *Id.* It would make little sense to find that only Mr. Edwards is a proper respondent when he had no responsibility or control over Mr. Kolev's detention. Mr. Shanahan, by contrast, had the actual power to produce Mr. Kolev at the time of the petition and was therefore the warden for all practical purposes and Mr. Kolev's immediate custodian. Indeed, officials under the supervision of Mr. Shanahan produced Mr. Kolev for his deportation processing in Manhattan on December 14, 2017.

In urging a transfer to the District of New Jersey, the government relies chiefly on language in *Rumsfeld* that core habeas petitions are properly brought "in only one district: the district of confinement." 542 U.S. at 443. Putting aside the fact that, as noted, *Rumsfeld* explicitly declined to extend itself to immigration cases, in that case—as in the vast majority of habeas cases—the petitioner and his immediate custodian shared a district. Here, that is not the case. Rather, due to the realities of federal immigration detention policy, while Mr. Kolev was housed in New Jersey, his immediate custodian, Mr. Shanahan, was in this district. This holding comports with *Rumsfeld*'s "two related subquestions" key to determining whether a given district is proper for a habeas petition: "who is the proper respondent . . . [and] does the [district] have jurisdiction over him or her?" *See* 542 U.S. at 434. Here, the answers are "Mr. Shanahan" and "yes."

The government also contends that other courts have considered and rejected the proposition that an ICE official in another state can be an immediate custodian. In those cases, however, the petitioners did not allege that the ICE officials were the wardens of the detention facilities in which they were held. Rather, they merely alleged that the legal control that the ICE officials exerted should have made them immediate custodians under *Rumsfeld*. *See, e.g.*, *Phrance*, 2014 WL 6807590, at *2. But that is not what Mr. Kolev is alleging here. He specifically and credibly alleges, without material dispute by the government, that at the time of the petition, Mr. Shanahan was the warden of the immigration detention facility and in that capacity exerted direct physical control and custody over Mr. Kolev. *See, e.g.*, *Hoyte v. Holder*, No. 10-CV-3460 (PAC) (JLC), 2010 WL 6350756, at *4 (S.D.N.Y. Oct. 22, 2010) (". . . the Petition must name the individual with the authority to produce [the petitioner]—the warden . . .").

This is not a novel claim. Courts have consistently held that the warden of the detainee's facility at the time of the petition is a proper habeas respondent, and specifically that ICE officials can be wardens of immigration facilities for the purposes of immigration habeas petitions. *See, e.g.*, *Santana v. Muller*, No. 12-CV-430 (PAC), 2012 WL 951768, at *1–2 (S.D.N.Y. Mar. 21, 2012). Indeed, in this Court's previous ruling applying the immediate custodian rule to such petitions, the Court noted that the petitioner was in the custody of an ICE field office director, even though he was detained at a local county jail. *See Medina-Valdez*, 2012 WL 4714758, at *2. In sum, when he filed his petition, Mr. Kolev explicitly and credibly identified Mr. Shanahan as the warden of the immigration detention facility in which he was being held, and the government has not refuted that characterization. Mr. Shanahan is therefore the proper respondent and since it is undisputed that he is located in this district, venue lies here.

Lastly, the Court will not transfer this matter to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). In light of the Court's ruling that venue is proper in this district for even the core habeas challenge, the government's argument that it would be inefficient to sever Mr. Kolev's injunctive and declaratory claims has lost its force. And Mr. Kolev's choice of this district as a forum, as well as the centrality of New York-based officials to his immigration petitions, check-ins, arrest, and detention, argue strongly against transfer. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am. Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); 28 U.S.C. § 1391(e)(1).

## CONCLUSION

For the reasons stated above, the Court finds that venue for this matter is proper within the Southern District of New York. In light of the government's request to hold Petitioner's class certification motion in abeyance, that class certification motion has been stayed since January 2018 and will remain stayed until the Court sets a new briefing schedule for that motion. No later than October 5, 2018, the parties shall submit a joint letter (1) explaining whether Petitioner intends to rely on his previously filed papers or to file new ones, and (2) proposing a briefing schedule for the motion for class certification. Finally, the Court observes that Petitioner's emergency motion for a preliminary injunction at docket entry 7 was previously denied by this Court during a December 14, 2017 phone conference.

Accordingly, the Clerk of Court is respectfully directed to terminate the motion pending at docket entry 7 and to formally stay the motion at docket entry 12.

SO ORDERED.

Dated:   September 17, 2018
         New York, New York

                                                    Ronnie Abrams
                                                    United States District Judge